1  EILEEN M. DECKER
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   TERRENCE P. MANN (Cal. Bar No. 211377)
4  SHEILA NAGARAJ (Cal. Bar No. 268927)
   Assistant United States Attorneys
5       1200 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (714) 338-3536/(213) 894-2690
7       Facsimile: (714) 338-3708/(213) 894-3713
        E-mail: terrence.mann@usdoj.gov
8               sheila.nagaraj@usdoj.gov

9  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
10

11                    UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14 UNITED STATES OF AMERICA,          CR No. 13-537(B)-BRO-27

15            Plaintiff,              GOVERNMENT'S OPPOSITION TO MOTION
                                      TO STRIKE COUNT THREE OF THE
16            v.                      SECOND SUPERSEDING INDICTMENT ON
                                      THE GROUND OF VINDICTIVE
17 LEONEL LAREDO, et al.,             PROSECUTION
      #27) Giselle Casado,
18
              Defendants.            Hearing Date: May 2, 2016
19                                   Hearing Time: 9:00 a.m.
                                     Location:    Courtroom of the
20                                                Hon. Beverly Reid
                                                  O'Connell
21

22

23      Plaintiff United States of America, by and through its counsel

24 of record, the United States Attorney for the Central District of

25 California and Assistant United States Attorneys Terrence P. Mann and

26 Sheila Nagaraj, hereby submits its opposition to the "Motion of

27 Defendant Giselle Casado to Strike, as to Her, Count Three of the

28 Second Superseding Indictment on the Ground of Vindictive Prosecution

or, in the Alternative, to Grant a Motion to Continue Her Trial to Allow Counsel Additional Time to Prepare to Defend Her Against Such Belatedly Added Charge," which was filed on April 6, 2016.  (Docket No. 942; the "Motion.")  On that same date, the government submitted a notice of non-opposition to the alternative request for a trial continuance (id. 944), and the instant submission is therefore limited to opposing the Motion's substantive allegations.

The opposition is based on the attached memorandum of points and authorities, the attached declaration of Terrence P. Mann, the attached exhibits, the files and records in this case, and any additional evidence and argument that the Court receives at the hearing on this matter.

Dated: April 15, 2016            Respectfully submitted,

                                 EILEEN M. DECKER
                                 United States Attorney

                                 LAWRENCE S. MIDDLETON
                                 Assistant United States Attorney
                                 Chief, Criminal Division

                                 _____/S/_____
                                 TERRENCE P. MANN
                                 SHEILA NAGARAJ
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................ii**Error! Bookmark not defined.**

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.     INTRODUCTION................................................1

II.    STATEMENT OF RELEVANT FACTS.................................2

       A.    The Three Charging Instruments in this Case.............2

       B.    Defendant Was on Notice of Potential Additional
             Charges as Early as December 2014......................4

III.   DEFENDANT HAS NOT MET THE HIGH THRESHOLD REQUIRED IN THIS
       CIRCUIT FOR PROVING VINDICTIVE PROSECUTION..................8

       A.    Charging Decisions Are Matters of Pure Prosecutorial
             Discretion.............................................8

       B.    A Prosecutor's Decision not to Seek the Harshest
             Possible Charges at the Commencement of a Case Is not
             a Basis for Dismissal..................................9

       C.    Defendant's Own Cited Authorities Militate against a
             Finding of Presumed or Actual Vindictiveness............13

IV.    CONCLUSION.................................................18

i

**TABLE OF AUTHORITIES**

**CASES**

Bordenkircher v. Hayes,
    434 U.S. 357 (1978)......................................passim

Nunes v. Ramirez-Palmer,
    485 F.3d 432 (9th Cir. 2007).................................9

Oyler v. Boles,
    368 U.S. 448 (1962)..........................................9

United States v. Armstrong,
    517 U.S. 456 (1996)......................................8, 9

United States v. Begay,
    602 F.3d 1150 (10th Cir. 2010)..............................13

United States v. Gamez-Orduno,
    235 F.3d 453 (9th Cir. 2000)............................11, 12

United States v. Gastelum-Almeida,
    298 F.3d 1167 (9th Cir. 2002)...............................11

United States v. Goodwin,
    457 U.S. 368.......................................10, 15, 16

United States v. Gurolla,
    333 F.3d 944 (9th Cir. 2003).................................8

United States v. Holler,
    411 F.3d 1061 (9th Cir. 2005)................................8

United States v. Kent,
    649 F.3d 906 (9th Cir. 2011).....................9, 10, 11, 16

United States v. LaBonte,
    520 U.S. 751 (1997)..........................................9

United States v. Stewart,
    770 F.2d 825 (9th Cir. 1985)..............................1, 13

**STATUTES**

18 U.S.C. § 924(c)(1)(A)(i).....................................3

18 U.S.C. § 1962(d).............................................2

18 U.S.C. § 922(g)(1)........................................3, 4

21 U.S.C. § 841(a)(1)..........................................3

21 U.S.C. § 843(b).............................................3

**TABLE OF AUTHORITIES (CONTINUED)**

21 U.S.C. § 846......................................................1, 3

21 U.S.C. § 851.......................................................16

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

It is a longstanding rule in this Circuit that the government's decision to bring "additional charges because a defendant is not willing to [accept a] plea bargain constitutes permissible prosecutorial discretion." <u>United States v. Stewart</u>, 770 F.2d 825, 829 (9th Cir. 1985) ("Even assuming the government did seek the superseding indictment" – which added "cocaine charges" – "in retaliation for Stewart's refusal to plead guilty, that alone is insufficient to establish vindictive prosecution."), citing <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978).

Nevertheless, defendant GISELLE CASADO ("defendant") has filed a motion to strike (i.e., dismiss) Count Three of the Second Superseding Indictment ("SSI"), charging her with violating 21 U.S.C. § 846: Drug Trafficking Conspiracy, on the ground of vindictive prosecution due to the government "so belatedly adding said charge" against her.[1]  (Docket No. 942, at 1; the "Motion" or "Mot.")  The Motion has no basis whatsoever in the law.  Defendant does not provide a single authority establishing that a proper, within-statute criminal charge may be dismissed solely because the government could have, or should have, filed the charge sooner.  To the contrary, every single case defendant cites supports the government's position that charging decisions are matters of pure prosecutorial discretion subject only to constitutional limits.  And, in the absence of a clear violation of a constitutional or statutory right – which is not

---

[1]    In the alternative, defendant moved "to continue her trial on the charges alleged [in the SSI] so as to allow her counsel time to prepare a defense to such a serious additional charge."  (Mot. at 2:2-5.)

1

alleged, let alone proven, by defendant – the inquiry must end.  The facts that (a) the government specifically advised that defendant might be added to the drug conspiracy count as early as December 2014, (b) there was no inappropriate basis, such as race or religion, nor any retaliatory motive underlying this decision, (c) government counsel's understanding of defendant's connection to the narcotics operations of the Florencia 13 criminal street gang (the "F13 Gang") did not crystalize until well after the initial charges were returned in August 2013, and (d) drug trafficking was a stated object of the RICO conspiracy, in which defendant was initially charged, preclude a finding of actual or presumed vindictiveness.  Moreover, the recent continuance of the trial date to June 14, 2016 (Docket No. 948) means that defendant will have approximately two months from the filing of this opposition until her trial, likewise ameliorating any prejudice possibly resulting from the return of the SSI.

Defendant has not carried her burden of demonstrating vindictive prosecution or any other violation arising from her addition to Count Three of the SSI, and the Court should therefore deny the Motion.

**II.  STATEMENT OF RELEVANT FACTS**

    **A.  The Three Charging Instruments in this Case**

On August 1, 2013, a federal grand jury returned the 31-defendant, 45-count original indictment in this case.  (Docket No. 1.)  For her part, defendant was named in Count One, which charged her with Racketeer Influenced and Corrupt Organizations ("RICO") Conspiracy, in violation of 18 U.S.C. § 1962(d).  As set forth in Count One, the pattern of racketeering activity conducted by the F13 Gang criminal enterprise included, among other things, "the distribution of, possession with intent to distribute, and conspiracy

2

1   to distribute and/or possess with intent to distribute, controlled

2   substances, in violation of Title 21, United States Code, Sections

3   841(a)(1), 843(b), and 846." (Docket No. 1, at 13-14.) Other

4   defendants, of course, were charged with various drug offenses,

5   violent crimes, firearm violations, and even wire fraud, the most

6   salient for current purposes being Count Four's Conspiracy to

7   Distribute and Possess with Intent to Distribute Methamphetamine,

8   Marijuana, Heroin, and Cocaine, in violation of 21 U.S.C. § 846.

9       On October 29, 2015, a grand jury returned the First Superseding

10  Indictment ("FSI") adding three charges against co-defendant JOSE

11  SANCHEZ ("SANCHEZ") only. (Docket No. 826.) Those three charges

12  comprised two counts of Possession of a Firearm in Furtherance of a

13  Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i)

14  and one count of Felon in Possession of a Firearm, violation of 18

15  U.S.C. § 922(g)(1). As explained in the government's status report

16  regarding the FSI, "the statute of limitations was going to run on or

17  about November 1, 2015" for those three charges, and "the government

18  is preparing to supersede again to consolidate all charges and

19  otherwise prepare a final indictment upon which the government may

20  proceed to trial." (Docket No. 824, at 1:3-9.)

21      On March 24, 2016, consistent with the government's prior

22  statements to the Court and the defense, the SSI was filed. (Docket

23  No. 931.) The SSI named only defendant and co-defendants JOSE DORADO

24  ("DORADO"), TANNOUS FAZAH ("FAZAH"), and SANCHEZ. And, as set forth

25  in the accompanying status report, the SSI consolidated the counts in

26  the original indictment and FSI, modified certain charging language

27  in the Introductory Allegations and subsequent counts, deleted

28  defendants no longer in the case (along with related allegations and

3

substantive charges), and also added (a) five new Overt Acts ("OAs") to the Count One RICO conspiracy, (b) a felon-in-possession charge, in violation of 18 U.S.C. § 922(g)(1), against DORADO (Count 11), and (c) CASADO to the existing narcotics conspiracy, which was now Count Three of the SSI.  (Docket No. 928, at 1:4-21.)

The five new Overt Acts in the RICO conspiracy included the F13 Gang's tagging of the grounds of the Spring Street Courthouse (OA 86), two pertaining to defendant (OAs 111, 113), and one each for SANCHEZ and DORADO (OAs 121, 122).  Defendant's Overt Acts provided:

> 111. On September 9, 2010, defendant CASADO, speaking in coded language over the telephone, advised [co-conspirator and F13 Gang shot caller Jesus Cervantes ("Cervantes")] that law enforcement was present at a location he had identified for packaging drugs, and that she knew of an apartment Cervantes could use for his drug trafficking activities. . . .

> 113. On October 23, 2010, Cervantes and defendant CASADO, speaking in coded language during a telephone conversation, discussed how their co-conspirators had no drugs left and how Cervantes was waiting for a delivery from a drug source of supply.

(SSI at 29-30.)

## B.    Defendant Was on Notice of Potential Additional Charges as Early as December 2014

Starting in late 2014, and continuing until as recently as within approximately 3-4 weeks of the return date of the SSI, the government has made clear the possibility of new charges against defendant, including, but not limited to, her being added to the drug trafficking conspiracy.  Attached hereto as Exhibit "A" is an e-mail chain showing a series of communications between government counsel and defendant's attorney of record.  (Declaration of Terrence P. Mann ("Mann Decl.") ¶ 2.)

The initial communication on December 18, 2014 (i.e., at the bottom of the e-mail chain) was from defendant's counsel and addressed the plea agreement previously sent to defendant.  (Mann Decl., Exhibit A at 2) ("Subject: "Casado plea offer.")  That first message stated: "Thank you again for accommodating my requests for additional time but we are not going to be able to settle this case, at least not at this time.  Should my client's views change, I'll let you know immediately."  (<u>Id.</u>)

The next day, December 19, 2014, the government sought clarification of that statement: "Thank you for your message.  Just so I'm clear, is your client's current position that she is rejecting the plea agreement and wants to go to trial?  I'm asking because I'm starting to prepare to supersede the indictment and need to know who will be in the FSI."  (<u>Id.</u> at 1.)  And, just over an hour later, defense counsel responded, "please include us in the FSI :)."  (<u>Id.</u>)

On December 22, 2014, the government specifically provided defendant with notice of potential future charges, as follows:

> Got it.  Though full disclosure: <u>We are continuing to investigate the remaining defendants; and being in the FSI may ultimately mean being added to the narcotics conspiracy, including, for some, based on the foreseeability of drug trafficking underlying extortionate taxes they collected – with the potential for custodial mandatory minimums.</u>  Likewise, if ongoing investigation demonstrates that your client passed any sort of message implicating violence, her exposure will drastically increase on that basis, as well.  I know this is far from your first rodeo, and you know how all this works.  I just want to make sure we don't have a conversation six months from now where you're asking why the government is being so harsh on your client.  I am being as accommodating as my Office will allow at the moment, but <u>that is going to change once we start getting ready for trial, at which time we'll start looking under every rock to make sure we have all possible evidence against the remaining defendants</u>.

1  (Mann Decl., Exhibit A at 1) (emphasis added.)  In response, defense

2  counsel advised: "If the 'ongoing investigation' finds anything new I

3  assume we will talk again.  If it merely results in a new and

4  different interpretation of the same so-called 'code words' that

5  might raise other issues."  (Id.)

6      Additionally, on November 18, 2015, the government extended a

7  revised plea agreement to defendant.  (Id. ¶ 3.)  The transmission e-

8  mail, which is attached hereto as Exhibit "B," also enclosed "a PDF

9  file containing some sample linesheets of wiretap calls relating to

10 your client" that "relate to such topics as her knowledge of drug

11 trafficking, her connection with the defendant who ordered the hit in

12 this case ('Yogi'), and her understanding that she was 'receiving

13 orders' from the Mexican Mafia member in charge of the F13 Gang

14 ('Leo')."  (Id., Exhibit B at 1.)[2]  The linesheets – which had been

15 produced in discovery in late 2013, as evidenced by the Bates-stamped

16 numbers in the bottom right-hand corner of each page – were

17 identified by government counsel while reviewing the evidence against

18 defendant for trial, but were by no means the extent of the evidence

19 against defendant.  (Mann Decl. ¶ 3.)

20     Beyond those and other recorded telephone calls, the government

21 also identified a cooperator who had had personal dealings with

22 defendant in connection with the charged RICO enterprise.  (Id.)  In

23 or around mid-2015, this cooperator described his/her dealings with

24 defendant, such as sending her extortionate tax proceeds collected

25 from inside prison and being instructed by defendant to go and tax

26 individuals she had identified as selling narcotics in an area

27      [2]  Exhibit B includes the e-mail and linesheets, but not the
   revised plea agreement or redline referenced in the message.

28

6

1  controlled by shot caller MARCOS LOPEZ.  (Mann Decl. ¶ 3.)

2  Documentation of these statements has already been provided to the

3  defense.  (Id.)

4       Moreover, prior to government counsel's review of wiretap calls

5  and corroboration of their evidentiary value by the aforementioned

6  cooperator, the government had not made a final decision as to

7  whether defendant should be added to the drug conspiracy count for

8  trial.  (Id.)  That state of affairs was true at the time of the

9  initial indictment in 2013, and it continued until the government

10 began preparing for trial in earnest in late 2015.  (Id.)  Indeed, up

11 until that time period, the government's investigation had focused on

12 lead defendant LEONEL LAREDO ("LAREDO"), who was believed to have

13 been gearing up for a highly contested trial.  (Id.)  Only after it

14 became clear that LAREDO wanted to enter guilty pleas did the

15 government shift its emphasis to the others remaining for trial,

16 including defendant.  (Id.)  That meant first finalizing the plea

17 agreements for LAREDO (which was filed on October 5, 2015) and for

18 co-defendant JOSUE ROJAS (November 23, 2015), before turning to the

19 charges in the SSI.  (Id.; Docket Nos. 813, 848.)  Consequently,

20 government counsel's understanding of the evidence relating to

21 defendant and the F13 Gang's drug trafficking did not, in fact,

22 crystalize until during trial preparation in 2016.  (Mann Decl. ¶ 3.)

23      Finally, the government advised defendant more recently that it

24 would be superseding the indictment a second time.  During the weeks

25 leading up to the March 24, 2016 return of the SSI, government

26 counsel called defense counsel and informed him that (a) the

27 government was preparing to supersede for trial and could not wait

28 any further for defendant to make a final decision as to whether she

7

wished to enter a guilty plea, and (b) defendant would most likely be added to the existing drug conspiracy count.  (Mann Decl. ¶ 4.)

## III.  DEFENDANT HAS NOT MET THE HIGH THRESHOLD REQUIRED IN THIS CIRCUIT FOR PROVING VINDICTIVE PROSECUTION[3]

### A.  Charging Decisions Are Matters of Pure Prosecutorial Discretion

It is a well-settled principle of criminal law that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." Bordenkircher, 434 U.S. at 364.  As the Supreme Court has explained:

> Judicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts.  Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.  It also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function.

United States v. Armstrong, 517 U.S. 456, 465 (1996) (citations and quotations omitted).

---

[3]  Although defendant describes the government's filing of the SSI as "outrageous" (Mot. at 2, 13), and her counsel referenced "outrageous government conduct" at the March 25, 2016 hearing, she does not actually assert it in the Motion.  Nor could she.  Such a claim would require a showing of conduct that was "so grossly shocking and so outrageous as to violate the universal sense of justice," United States v. Holler, 411 F.3d 1061, 1065 (9th Cir. 2005); and defendant would need to prove that a government agent "engineer[ed] or direct[ed] a criminal enterprise" from start to finish, which "is not met when the government merely infiltrates an existing organization, approaches persons it believes to be already engaged in or planning to participate in the conspiracy, or provides valuable and necessary items to the venture," United States v. Gurolla, 333 F.3d 944, 950 (9th Cir. 2003).  That claim, of course, is plainly unavailable based on the facts of this case.

Prosecutorial discretion is subject to constitutional limits: a prosecutor cannot seek additional charges solely to punish a defendant for exercising a constitutional or statutory right, Nunes v. Ramirez-Palmer, 485 F.3d 432, 441 (9th Cir. 2007); nor can a charging decision be based on "an unjustifiable standard, such as race, religion, or other arbitrary classification," Armstrong, 517 U.S. at 464, quoting Oyler v. Boles, 368 U.S. 448, 456 (1962). Courts should not "exercise judicial power over a special province of the Executive," unless a defendant meets a "rigorous" and "demanding" standard of proof that the prosecutor has brought a charge for reasons forbidden by the Constitution. Id. at 463-464, 468 (internal quotations omitted). Therefore, absent a clear violation of constitutional rights, prosecutorial discretion is "an integral feature of the criminal justice system, and is appropriate." United States v. LaBonte, 520 U.S. 751, 762 (1997).

**B.    A Prosecutor's Decision not to Seek the Harshest Possible Charges at the Commencement of a Case Is not a Basis for Dismissal**

Defendant's claims that the government should have added her to the drug conspiracy charge earlier in the proceedings, and therefore is barred from doing so now, are without merit.  Contrary to the defense argument, the fact that the government could have brought charges before and chose not to cannot justify dismissal.  As the Ninth Circuit has recognized, "prompting prosecutors to file the harshest possible charges at the outset would [cause] prejudic[e] to defendants, for an accused would bargain against a greater charge, face the likelihood of increased bail, and run the risk that the court would be less inclined to accept a bargained plea." United

States v. Kent, 649 F.3d 906, 913 (9th Cir. 2011), quoting United States v. Goodwin, 457 U.S. 368, 378 (internal quotations omitted).

The Supreme Court has also made clear that, at the pre-trial stage, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." Goodwin, 457 U.S. at 381. Thus, to hold that the prosecutor's desire to induce a guilty plea is an "unjustifiable standard" upon which to base a decision to prosecute "would contradict the very premises that underlie the concept of plea bargaining itself." Bordenkircher, 434 U.S. at 364-65. Furthermore, the Supreme Court and Ninth Circuit have both held that due process is not violated by bringing harsher charges as an outgrowth of failed plea negotiations because such a scenario is not meaningfully distinguishable from charging more strictly at the outset, and then reducing the charges after plea negotiations. See Bordenkircher, 434 U.S. at 363-64; Kent, 649 F.3d at 913. Nor is the permissibility of enhanced charges limited to the context of failed plea negotiations: "prosecutors may add charges pretrial for any number of permissible reasons, such as coming to a new understanding of the crime or evidence." Kent, 649 F.3d at 913.[4]

That is what occurred in the instant case. The SSI was, in part, the result of additional investigation after plea negotiations with defendant failed and the government was preparing for trial, which government counsel previewed for defendant as early as December 2014. Moreover, the defense was therefore on notice of the possibility of being added to the drug trafficking conspiracy –

---

[4] While this Court's application of the law to the facts of the instant case is reviewed de novo, review for clear error "may still be appropriate . . . when a determination of vindictive prosecution turn[s] upon factual findings." Kent, 649 F.3d at 912.

including any additional sentencing exposure – well over one year before the SSI was filed in March 2016.[5]  After determining that lead defendant LAREDO wanted to enter guilty pleas in this case, and finalizing plea deals with LAREDO and ROJAS, the government turned to the SSI; however, prior to engaging in that exercise, the government had not made a final determination as to whether defendant should be added to the narcotics conspiracy.  (Mann Decl. ¶ 3.)  Therefore, under Bordenkircher and other governing law, the government's conduct in pursuing the SSI – as a result of failed plea negotiations with defendant, a fresh understanding of the evidence based on a focused review for trial, and new corroborating evidence from a cooperating witness – was entirely proper.  Even if there were no failed plea negotiations or new evidence, it would have been entirely proper for the government to supersede before trial based solely on "coming to a new understanding of the crime or evidence," which occurred here. Kent, 649 F.3d at 913.

Moreover, two Ninth Circuit cases – United States v. Gamez-Orduno, 235 F.3d 453 (9th Cir. 2000), and United States v. Gastelum-Almeida, 298 F.3d 1167 (9th Cir. 2002) – are instructive.  In Gamez-Orduno, the Ninth Circuit analyzed a prosecutorial vindictiveness claim, where the defendants argued that after they indicated they would reject the government's plea offer, it filed § 851 Informations

---

[5]  As government counsel explained in his December 22, 2014 correspondence, "being in the [final superseding indictment] may ultimately mean being added to the narcotics conspiracy, including, for some, based on the foreseeability of drug trafficking underlying extortionate taxes they collected – with the potential for custodial mandatory minimums.  Likewise, if ongoing investigation demonstrates that your client passed any sort of message implicating violence, her exposure will drastically increase on that basis, as well."  (Mann. Decl., Exhibit A at 1.)

subjecting them to enhanced mandatory minimum sentences, plus the government sought a superseding indictment in response to their motions to suppress.  In affirming the district court's denial of the vindictiveness motion, the Ninth Circuit held that "the timing of the superseding indictment" was "adequately explained by the delays inherent in the plea negotiation process," and noted that there, as here, the prosecutor had notified the Court and defendants that plea negotiations were ongoing, but that she would be seeking a superseding indictment before trial.  235 F.3d at 463.  The Ninth Circuit concluded that "on this record, our cases leave no room for appellants' contention that we may presume vindictiveness either from the prosecutor's explicit linkage of the increased charges with appellants' refusal to plead guilty," or "from the fact that the superseding indictment was filed shortly after appellants filed their motions to suppress."  Id.  Gastelum-Almeida is in accord.  There, defendant's argument that his due process rights were violated when the government superseded the indictment after he rejected the government's plea offer was soundly rejected.  The Ninth Circuit held: "Prosecutors often threaten increased charges and, if a guilty plea is not forthcoming, make good on that threat.  Such prosecutorial actions as part of plea negotiations do not violate due process.  There is no indication that anything other than that occurred here."  298 F.3d at 1172 (internal citations omitted).

Here, like in Gamez-Orduno, the timing of the SSI is explained partially by delays in plea negotiations – e.g., final negotiations with co-defendants LAREDO (whose plea agreement was filed on October 5, 2015) and ROJAS (November 23, 2015) (Docket Nos. 813, 848) – as well as an exercise of the prosecution's "broad discretion" in

assessing the evidence and making charging decisions.  In any event, defendant fails to establish that a multi-year delay can create a reasonable likelihood of vindictiveness as a matter of law.  See United States v. Begay, 602 F.3d 1150, 1154 (10th Cir. 2010) (reversing district court's finding of vindictiveness where government delayed return of superseding indictment approximately 2½ years after filing original charges).  Additionally, the government's repeated notice to defendant that it was preparing to supersede the indictment and was evaluating adding her to the drug trafficking conspiracy if she chose to proceed to trial were, per Gastelum-Almeida, consistent with Ninth Circuit precedent.  See also Stewart, 770 F.2d at 829 ("Stewart contends the government's conduct in seeking the superseding indictment, which added the cocaine charges, constituted vindictive prosecution.  He argues that the government sought the new indictment because he refused to accept a plea bargain.[]  Bringing additional charges because a defendant is not willing to plea bargain constitutes permissible prosecutorial discretion.  Stewart was free to accept or reject the prosecution's offer.  Even assuming the government did seek the superseding indictment in retaliation for Stewart's refusal to plead guilty, that alone is insufficient to establish vindictive prosecution.") (citations and internal quotations omitted).  Accordingly, defendant has not met her burden and cannot prevail on the Motion.

### C.   Defendant's Own Cited Authorities Militate against a Finding of Presumed or Actual Vindictiveness

Defendant's attempts to distinguish Bordenkircher, Goodwin, and Kent are misplaced.  Defendant encourages the Court to engage in nothing more than mere speculation as to the government's motives for

adding defendant to Count Three of the SSI, and essentially asks the Court to presume a reasonable likelihood of vindictiveness without establishing a single material fact in support of her argument.  As a preliminary matter, conceded by defendant (as she must), each of the above three cases held that the claim of vindictive prosecution at issue necessarily <u>failed</u>.  (Mot. at 14-15.)  A closer look at these three cases that form the crux of the Motion reveals that they uniformly support the government's position here.

As to <u>Bordenkircher</u>, defendant speculates that "what might the result have been if that prosecutor's 'intention' to obtain the recidivist indictment had not been 'clearly expressed at the outset of plea negotiations'?"  (Mot. at 15-16.)  In that case, the prosecutor's decision to seek an additional pre-trial indictment was held to be permissible even though the prosecutor conceded that: it was in response to the defendant not accepting a plea bargain; the government had the evidence supporting the additional indictment before the original charges were filed; and the additional indictment raised the defendant's potential sentence from a possible 10 years to mandatory life.  <u>Bordenkircher</u>, 434 U.S. at 358-59.  The Court held that "in the 'give-and-take' of plea bargaining, there is no [impermissible] element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."  <u>Id.</u> at 363.  Defendant's sheer speculation here is not only inconsistent with <u>Bordenkircher</u>; it is also contrary to the facts before this Court.  As defendant fully acknowledges (Mot. at 6-7), the government informed defendant in December <u>2014</u> that the possibility of superseding charges existed, should defendant elect to reject its plea offer.  This message was repeated once more in a status report

14

filed with the Court in anticipation of the May 11, 2015 status

conference[6] and reflected in statements to the defense in November

2015 and as recently as approximately March 2016.  (Mann Decl. ¶ 3.)

Goodwin likewise lends no meaningful support to defendant's

argument.  That case involved a defendant who initially faced a

misdemeanor charge, but then it was superseded by a felony indictment

arising out of the same conduct as the misdemeanor.  Goodwin, 457

U.S. at 370.  Defendant was ultimately tried and convicted on the

felony as well as the misdemeanor counts.  Id. at 371.  Defendant

moved to set aside the verdict on the ground of vindictive

prosecution, arguing that the felony charge was lodged only by virtue

of defendant's exercising his right to proceed to trial.  Id.  The

district court denied the motion, but the Fourth Circuit Court of

Appeals reversed, adopting a legal presumption of retaliation

"designed to spare courts the 'unseemly task' of probing the actual

motives of the prosecutor."  Id. at 372 (internal citation omitted).

The Supreme Court then reversed the Court of Appeals, holding that

"given the severity of such a presumption," the Court has found such

a presumption to exist only where there is a "reasonable likelihood

of vindictiveness."  Id. at 373.  There, as here, the Court noted

that there was no evidence giving rise to a claim of "actual

vindictiveness," and reiterated that "[a] prosecutor should remain

free before trial to exercise the broad discretion entrusted to him

---

[6]  In that status report, filed on May 8, 2015, the government "note[d] that it intends to supersede the indictment for trial, in order to conform the charges to the Court's recent orders and to the defendants who will be tried."  (Docket No. 645 at 2.)  The status report continued, "While counts may be added for certain defendants, the conduct underlying those new charges has already been identified in the produced discovery."  (Id.)

to determine the extent of the societal interest in prosecution." _Id._ at 381-82.  Indeed, simply because there was an opportunity for vindictiveness did not, in the Court's view, "justify the imposition of a prophylactic rule."  _Id._ at 384.

Finally, in _Kent_, the government conveyed by e-mail that the only plea offer it was contemplating involved cooperation; if the defendant did not sign such an agreement, he would face an enhanced mandatory minimum sentence upon the government's filing of an information under 21 U.S.C. § 851 (the "§ 851 Information").  _Id._ at 910.  After the defendant unsuccessfully attempted to plead open to the indictment (prior to the filing of the § 851 Information), he moved the district court for a finding of vindictive prosecution, and then appealed the denial of the motion.  _Id._ at 911.  The Ninth Circuit rejected defendant's argument outright, holding in relevant part that "[a]s a general matter, prosecutors may charge and negotiate as they wish," and furthermore, "[a]s a matter of law, the filing of additional charges to make good on a plea bargaining threat . . . will not establish the requisite punitive motive" to make a case of vindictive prosecution.  _Kent_ makes no reference to the purported "ambiguous warning[s]" that defendant complains of here. (Mot. at 27.)  Nor does _Kent_ provide support for defendant's unfounded argument that a Speedy Trial Act stipulation somehow "supersedes" a warning by the government that defendant faced additional, more serious charges if she did not accept a tendered plea offer, which, as explained _infra_, is wholly irrelevant to the "crystallization" of the prosecution's assessment of the case.  (_Id._)

Here, just as in _Bordenkircher_, _Goodwin_, and _Kent_, defendant has adduced no facts to support a "reasonable likelihood of

16

1    vindictiveness," let alone actual vindictiveness.  Simply because the

2    government did not mention potential superseding charges against her

3    in the various Speedy Trial Act stipulations filed before this Court

4    does not somehow negate statements made to defense counsel in 2014,

5    2015, and 2016 indicating that a superseding indictment for trial

6    would likely place defendant in the drug conspiracy charge.  Indeed,

7    such warnings would have no place in a stipulation designed to inform

8    the Court that the parties sought a new trial date.

9         Defendant's attempts to compare herself to co-defendant BEATRIZ

10   TAVIRA ("TAVIRA") in order to somehow infer vindictiveness are

11   similarly unavailing.  (See, e.g., Mot. at 20-22) ("What else might

12   explain the government's failure to include Tavira and Casado in the

13   original count four?").  While it is true that both defendant and

14   TAVIRA were initially charged in the RICO conspiracy with "visit[ing]

15   . . . LAREDO[] and/or other inmates incarcerated at Pelican Bay State

16   Prison in order to relay messages to and from other F13 Gang members

17   and associates" (SSI at 15:5-9), defendant was also alleged to have

18   "correspond[ed] in writing" with LAREDO "in order to receive

19   direction regarding the business of the F13 Gang" and to have

20   "collect[ed] extortionate taxes" for the gang.  (SSI at 14:27-15:4,

21   17:2-5.)  Defendant's offense conduct in connection with the charged

22   RICO enterprise was, therefore, quite different from TAVIRA's and

23   also narcotics-related (i.e., collecting drug taxes).  As noted

24   above, recorded telephone calls in which defendant discussed drug

25   trafficking with F13 Gang shot caller CERVANTES (see, e.g., OAs 111,

26   113) and witness statements establishing her having ordered the

27   taxing of street dealers operating in the gang's territory (Mann

28

17

Decl. ¶ 3) show her to have been an active participant in the charged narcotics conspiracy.

In sum, neither the three cases highlighted by defendant nor the inferences of vindictiveness she tries to assert by equating her offense conduct with that of TAVIRA can save the Motion, which is fatally flawed and should be denied.[7]

**IV.   CONCLUSION**

For the foregoing reasons, this Court should deny the Motion in its entirety.

---

[7]   Equally frivolous is defendant's attempt to find sinister meaning in an October 15, 2015 "letter [sent] to all defense counsel – a most significant letter for purposes of this motion, it is submitted." (Mot. at 8-9, 26:3-5.)  Despite defense protestations – "More importantly still, what is counsel for defendant Casado to make of the fact that none of the acts listed have anything to do with her!" (Mot. at 26:18-19) – that letter expressly stated that is was providing notice of potential Rule 404(b) evidence and making an initial disclosure of expert witnesses.  An excerpt of the first three pages from that 37-page disclosure is attached hereto as Exhibit "C" for the Court's reference.  The fact that the government's Rule 404(b) notice did not mention defendant or any superseding charge against her is irrelevant and in no way informs the Court's vindictiveness analysis.